JODI H. LINKER
Federal Public Defender
Northern District of California
DEJAN M. GANTAR
Assistant Federal Public Defender
8th Floor, Suite 820
55 South Market Street
San Jose, CA 95113
Telephone: (408) 291-7753
Facsimile: (408) 291-7399
Email: Dejan_Gantar@fd.org

Counsel for Defendant
MAGALLON

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JASON MAGALLON,<br><br>　　　　Defendant. | Case No. CR 21–78 EJD<br><br>**DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM; OBJECTIONS TO REVISED PRESENTENCE REPORT**<br><br>**Court:** Courtroom 4, 5th Floor<br>**Hearing Date:** July 18, 2022<br>**Hearing Time:** 1:30 p.m. |

## INTRODUCTION & BACKGROUND

Defendant Jason Magallon, by and through counsel, respectfully submits the following Supplemental Sentencing Memorandum.

On August 30, 2021, Mr. Magallon pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), pursuant to a Rule 11(c)(1)(C) plea agreement. *See* ECF 28-29. Under that agreement, Mr. Magallon and the Government stipulated to a sentence of twelve months and one day. *See* ECF 29, Plea Agreement. On November 18, 2021, Probation filed the PSR and calculated Mr. Magallon's advisory sentencing range to be 15-21 months and, in accordance with the plea agreement, recommended a sentence of twelve months and one day. *See* PSR ¶¶ 3, 20-28, 62. On November 23, the parties filed their respective sentencing memoranda. *See* ECF 34-35.

On December 1, 2021, one day before his scheduled sentencing hearing, Pretrial Services reported that Mr. Magallon had removed his ankle monitor and was not in communication with them. ECF 39. Approximately six weeks later, on January 11, 2022, Mr. Magallon was arrested by the Salinas Police Department outside of his mother's home, and has been in custody since that date. On January 26, 2022, the parties appeared before the magistrate court. Mr. Magallon waived a detention hearing and did not seek release pending sentencing. *See* ECF 43.

Pursuant to these developments, Probation revised the presentence report, which it filed on April 26, 2022. Probation filed the Revised PSR ("RPSR") to include information regarding Mr. Magallon's removal of the ankle monitor and his subsequent arrest. The RPSR further recalculated his guidelines to include a two-level increase for obstruction of justice under USSG § 3C1.1, and an additional two-level increase from his previous guidelines for loss of acceptance under USSG § 3E1.1, resulting in an advisory sentencing range of 27-33 months; the RPSR recommends an increased sentence of 27 months. *See* RPSR ¶¶ 3, 5-6, 27-31, 65.

The Government has filed a revised sentencing memorandum, and argues that it is no longer bound the sentencing recommendation in the plea agreement. *See* ECF 58, Govt.'s Rev. Sent. Mem. at 1. The Government further argues for a recalculation of Mr. Magallon's guidelines, consistent with

Probation's revised calculation, and argues for a sentence of 27 months. *Id.*[1]

For the reasons set forth below, Mr. Magallon respectfully requests the Court sentence him to twelve months and one day.

## ARGUMENT

**I.    THE SECTION 3553(a) FACTORS WARRANT THE REQUESTED SENTENCE.**

[redacted]

---

[1] The Government does not explicitly argue that Mr. Magallon breached the plea agreement, but that is obviously the inference. In the event Court finds that Mr. Magallon breached the plea agreement, neither party is bound by its terms.





C. **In combination with Mr. Magallon's personalized release plan, the requested sentence would also achieve the various goals of sections 3553(a)(2).**

Section 3553(a)(2) directs the Court to consider, inter alia, the need for the sentence imposed to "provide just punishment for the offense[,]" "to afford adequate deterrence to criminal conduct[,]" and "to provide the defendant with . . . correctional treatment in the most effective manner[.]" 18 U.S.C. §

3553(a)(2)(A), (B), & (D). The requested sentence would achieve these goals.

As reflected in the RPSR, a sentence of twelve months and one day would be the most serious custodial term imposed against Mr. Magallon for any prior conviction, and it would be the first prison term ever imposed. His longest previous custodial term was 16 months, served in a county jail, and at half-time, pursuant to California Penal Code section 4019. Put differently, Mr. Magallon's longest previous custodial term was eight months, served in a county jail. Thus, the requested sentence would be longer than any prior custodial term he has previously served, and would therefore provide adequate deterrence and constitute "just punishment" under section 3553.

Moreover, the requested sentence—twelve months and one day, followed by intensive supervision by Probation—would facilitate rehabilitation and treatment, rather than create obstacles to it, as a lengthy prison term would do. ███████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████ Such a plan would possibly include pursuing higher education and acquiring gainful employment, the opportunities to which have been road blocked by his mental health conditions.

As such, with the assistance of the Federal Public Defender Office's social worker, Mr. Magallon has developed a re-entry plan that specifically targets his unique challenges, and emphasizes achieving these goals. *See* Exhibit C, Reentry Plan. This personalized re-entry plan would serve to complement any programs and counseling Probation may direct him to participate in while on supervision, and will serve as a vital tool to assist in ensuring Mr. Magallon can have a successful transition back into the community following his prison term. This re-entry plan is designed with a focus on directing Mr. Magallon to resources that he can rely on once he completes his sentence, and ensure and sustain his long-term success after termination of supervision. Moreover, the plan is tailored to cover a broad range of services available in Monterey County, Mr. Magallon's county of residence.

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

1 █
2 █
3 █
4 █
5 █
6 █
7 █
8 █

9  In sum, the requested sentence is one that would constitute just punishment, and would also emphasize rehabilitation, which would be facilitated by intensive supervision. █

11 █
12 █
13 █
14 █

15 █ Moreover, Congress has expressly made clear that prison terms serve to punish, and do little else. Indeed, when considering what term of imprisonment to impose, the Court must "recognize[e] that imprisonment *is not an appropriate means of promoting correction and rehabilitation*[.]" 18 U.S.C. § 3582(a) (emphasis added); *see also* 28 U.S.C. § 994(k) ("The Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant[.]")

21 █
22 █

---

[2] *See* Treatment Denied: The Mental Health Crisis in Federal Prisons, The Marshall Project (November 21, 2018), available at: https://www.themarshallproject.org/2018/11/21/treatment-denied-the-mental-health-crisis-in-federal-prisons?ref=hp-1-100 (investigation detailing generally how the BOP has failed to provide effective mental health treatment and services for inmates, and how such treatment for inmates has declined over time); U.S. Dept. Of Justice, Office of the Inspector General, Review of the Federal Bureau of Prisons' Use of Restrictive Housing for Inmates with Mental Illness (July 2017), available at: https://oig.justice.gov/reports/2017/e1705.pdf (OIG investigation finding regarding the BOP's failing in adequately addressing issues concerning prisoners with mental illness, their confinement, and their overall monitoring).

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████

**II.    OBJECTION TO REVISED PRESENTENCE REPORT: MR. MAGALLON SHOULD NOT LOSE ACCEPTANCE UNDER USSG § 3E1.1, AND IN THE EVENT THE COURT DOES NOT ACCEPT THE PLEA AGREEMENT, THE COURT SHOULD CALCULATE HIS FINAL ADVISORY SENTENCING RANGE TO BE 21-27 MONTHS.**

Mr. Magallon respectfully objects to Probation's revised guidelines calculation. Specifically, Probation has calculated an additional two-level enhancement for obstruction of justice under USSG § 3C1.1 and a two-level increase for loss of acceptance of responsibility under USSG § 3E1.1 *See* RPSR ¶¶ 27, 30. Probation calculates his new total offense level as 16. *Id.* ¶¶ 3, 31. Accordingly, because Mr. Magallon is placed in CHC III, Probation calculates Mr. Magallon's revised advisory sentencing range to be 27-33 months. *Id.* ¶ 65. Mr. Magallon respectfully disagrees with Probation as to that calculation. Even if the Court imposes the two-level enhancement for obstruction, it should not deny Mr. Magallon the two-level reduction for acceptance of responsibility under section 3E1.1. In the event the Court does not accept the plea agreement, the total offense level should be 14, resulting in an advisory sentencing range of 21-27 months.[3]

The acceptance of responsibility guidelines and the obstruction of justice guidelines may be exclusive of one another. As the Ninth Circuit has explained, "the two adjustments [] serve separate and distinct purposes." *United States v. Gallegos*, 613 F.3d 1211, 1217 (9th Cir. 2010); *see also* USSG § 3E1.1, Application Notes 4 & 5. Reduction for acceptance "relates to a defendant's remorse, his assistance in the investigation of prosecution of his misconduct, or preserving government resources required to prepare for trial." *Gallegos*, 613 F.3d at 1217 (internal citation omitted). An obstruction enhancement, in contrast, "focuses on a defendant's conduct in obstructing or impeding the process by which the government administers justice." *Id.* (internal citation omitted). While conduct that results in an obstruction enhancement "ordinarily indicates that the defendant has not accepted responsibility for

---

[3] Base offense level of 14 under USSG § 2K2.1(a)(6); +2 for obstruction under § 3C1.1, and -2 for acceptance under § 3E1.1.

1 his criminal conduct[,]" in "extraordinary cases" both adjustments may apply. *United States v. Rosas*, 615 F.3d 1058, 1067 (9th Cir. 2010); *see also United States v. Reed*, 52 Fed. App'x. 17 (9th Cir 2002) (unpublished).

"[T]he relevant inquiry for determining if a case is an extraordinary case . . . is whether the defendant's obstructive conduct is not inconsistent with an acceptance of responsibility." *United States v. Hopper*, 27 F.3d 378, 383 (9th Cir. 1994) (emphasis omitted). "Cases in which obstruction is not inconsistent with an acceptance of responsibility arise when a defendant, although initially attempting to conceal the crime, eventually accepts responsibility for the crime and abandons all attempts to obstruct justice." *Id.* (internal citations omitted). "[A]s long as the defendant's acceptance of responsibility is not contradicted by an ongoing attempt to obstruct justice, the case is an extraordinary case[.]" *Id.* "To conclude a case is not extraordinary, the district court must necessarily find the obstructive conduct is inconsistent with the defendant's acceptance of responsibility." *Id.* Importantly, the nature of the obstructive conduct, including its duration and its methodology, are relevant considerations. *See id.* (noting that while the defendant's obstructive conduct persisted for days, "it was not a methodical, continued effort to obstruct justice.")

Mr. Magallon's is an "extraordinary case" warranting both adjustments. First, it is clear on this record that Mr. Magallon's removal of his ankle monitor and failure to appear was not a methodical, calculated, or sophisticated attempt to evade imposition of sentence, or law enforcement more generally. █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

|   |   |
|---|---|
| 1 | ████████████████████████████████████████ |
| 2 | ███████████████████████████████ |

None of this is laudable. But it serves to show that Mr. Magallon's conduct was not a calculated or sophisticated attempt to obstruct justice, even if it may have had that effect. Nor was its duration particularly lengthy—he was arrested six weeks after removing his ankle monitor, and again, directly in front of his mother's home, where law enforcement knew he lived—and where *he* knew law enforcement knew he lived. It follows that even an adjustment for obstruction under section 3C1.1 should not lead to his loss of acceptance of responsibility points—he has demonstrated acceptance for the underlying offense to which he's pled guilty, admitted to a broad set of facts related to that offense, and did so promptly, saving prosecutorial resources. And when he was arrested earlier this year, he did not seek own his release, nor does he now seek to withdraw his plea. His conduct from last year is not inconsistent with that acceptance.

[Lines 13–22 redacted]

And despite those decisions, he has accepted responsibility for his offense, and assisted the government in his own prosecution by promptly pleading guilty and preserving government resources in doing so. As such, the Court should find this to be an extraordinary case in which both adjustments apply under sections 3C1.1 and 3E.1. apply, and impose a sentence of 12 months and one day.

## CONCLUSION

For the foregoing reasons, and those set forth in his Sentencing Memorandum, Jason Magallon

respectfully requests the Court impose a sentence of twelve months and one day.

Dated: June 22, 2022                                        Respectfully submitted,

                                                  JODI H. LINKER
Federal Public Defender
Northern District of California

*/s/ Dejan M. Gantar*
DEJAN M. GANTAR
Assistant Federal Public Defender